# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOAH FAERBER, an individual and on behalf of all others similarly situated,<br>          Plaintiff,<br><br>                    v.<br><br>ACCOR HOTELS & RESORTS (MARYLAND) LLC, a Maryland limited liability company doing business as CLAREMONT CLUB & SPA BERKELEY; DIANE BINDER, an individual; and DOES 1 through 100, inclusive,<br>          Defendants. | 2:25-cv-08169-DSF-JC<br><br>Order DENYING Plaintiff's Motion to Remand (Dkt. 12) |

Defendant Accor Hotels & Resorts (Maryland) LLC removed this wage-and-hour putative class action based on, among other grounds, jurisdiction under the Class Action Fairness Act. Dkt. 1 (Notice of Removal (NOR)). Plaintiff Noah Faerber moves to remand. Dkt. 12 (Mot.). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. Faerber's motion is DENIED. Accor's requests for judicial notice, Dkt. 14, and to strike Faerber's reply, Dkt. 16, are DENIED as moot.

## I. LEGAL STANDARD

The Class Action Fairness Act (CAFA) "permits a defendant to remove a class action to federal court if there is minimal diversity

between the parties (that is, at least one plaintiff is a citizen of a different State from at least one defendant), if the class contains at least 100 members, and, . . . if the amount in controversy exceeds $5 million." Perez v. Rose Hills Co., 131 F.4th 804, 807 (9th Cir. 2025) (citing 28 U.S.C. §§ 1332(d), 1453(b)). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court [and] intended CAFA to be interpreted expansively." Arias v. Residence Inn by Marriott, 936 F.3d 920, 924 (9th Cir. 2019) (quoting Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015)).

A "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by [28 U.S.C.] § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014).

The "plaintiff can contest the amount in controversy by making either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations." Harris v. KM Indus., Inc., 980 F.3d 694, 699 (9th Cir. 2020). "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." Salter v. Quality Carriers, Inc., 974 F.3d 959, 964 (9th Cir. 2020) (internal quotation marks omitted) (quoting Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014)).

"A factual attack, by contrast, 'contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings.'" Id. (quoting Leite, 749 F.3d at 1121). "When a factual attack is mounted, the responding party 'must support her jurisdictional allegations with "competent proof" . . . under the same evidentiary standard that governs in the summary judgment context.'" Id. (alteration in original) (quoting Leite, 749 F.3d at 1121).

The "removing party must be able to rely 'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a

preponderance of the evidence that the amount in controversy exceeds $5 million,' as long as the reasoning and underlying assumptions are reasonable." <u>Jauregui v. Roadrunner Transp. Servs., Inc.</u>, 28 F.4th 989, 993 (quoting <u>LaCross v. Knight Transp. Inc.</u>, 775 F.3d 1200, 1201 (9th Cir. 2015)).  "An assumption may be reasonable if it is founded on the allegations of the complaint." <u>Arias</u>, 936 F.3d at 925.

## II. DISCUSSION

With respect to CAFA jurisdiction, the only issue in dispute is whether Accor has proven the $5 million amount-in-controversy requirement.  Mot. at 15-28.  Accor contends the amount in controversy is $11,073,878.21, broken down as follows:

| Claim | Amount in Controversy |
|---|---|
| Overtime Wages Violations | $198,446.80 |
| Off-the-Clock Minimum Wage Violations | $344,447.18 |
| Meal Break Violations | $920,545.67 |
| Rest Break Violations | $988,008.59 |
| Waiting Time Penalties | $5,341,257.60 |
| Wage Statement Penalties | $1,023,900.00 |
| Expense Reimbursement | $42,496.73 |
| Attorneys' Fees | $2,214,775.64 |
| **Total** | **$11,073,878.21** |

Dkt. 13 (Opp'n) at 7-18.[1]  Faerber argues, without offering proof, that Accor has failed to meet its burden of establishing these amounts.

## A.    Factual Challenge

Faerber challenges the reasonableness of Accor's assumptions. That is a factual attack on Accor's allegations.  <u>Harris</u>, 980 F.3d at 700 ("A factual attack . . . need only challenge the truth of the defendant's

---

[1] The amounts in controversy for the waiting time penalties and wage statement penalties claims, and their associated attorneys' fees, were included in Accor's notice of removal.  NOR ¶¶ 32-45.  The amounts in controversy for the other claims, and their associated attorneys' fees, were included in Accor's opposition.  Opp'n at 12-18.

jurisdictional allegations by making a reasoned argument as to why
any assumptions on which they are based are not supported by
evidence.").  "Once [Faerber] contest[s] the reasonableness of [Accor's]
assumptions, [Accor] ha[s] the burden of proving by a preponderance of
the evidence that its assumptions [are] reasonable."  Id. at 701.

Faerber's main factual challenge is that Accor impermissibly
assumes a "100% violation rate" for certain claims when his complaint
alleges that violations "occurred only 'at times' and to 'some' putative
class members."  Mot. at 15-19, 21-26; Dkt. 16 (Reply) at 9-13.  Faerber
does not offer any other evidence to contest the assumptions underlying
Accor's violation rates.  Reply at 7.

## 1.    Waiting Time Penalties

Examining each of the contested claims in turn, starting with
Faerber's waiting time penalties claim, Faerber alleges that
"Defendants have, at times, failed to pay Plaintiff and Class Members,
or some of them, the full amount of their wages owed to them upon
termination and/or resignation . . . including for, without limitation,
failing to pay overtime wages, minimum wages, and premium wages."
Dkt. 1-1 (Compl.) ¶ 18; see also id. ¶ 66.

Based on these allegations, Faerber identified 854 putative class
members who had separated from their employment, multiplied that
number by their average base regular rate ($26.06), multiplied that by
the average daily hours worked as alleged in the complaint (8 hours),
and multiplied that by the full 30-day statutory period, resulting in an
amount in controversy of $5,314,257.60.  Opp'n at 7-8.

First, Faerber argues that the qualifier "some of them" with
respect to "Class Members" means that "*not* all class members suffered
violations triggering waiting time penalties."  Mot. at 22.  But Accor
does not apply the violation rate to "all class members."  The complaint
defines "Class Members" as "all other current and former non-exempt
California employees employed by or formerly employed by
Defendants."  Compl. ¶ 1; see also id. ¶ 64 ("Plaintiff and Class
Members were employees or former employees of Defendants[.]").

Instead, Accor identified "[a]t least 854 California employees" who were
"separated from their employment."  Dkt. 13-2 (Zarate Decl.) ¶ 6(b). [2]
Accor therefore included only "some of" the Class Members, namely,
only "*former* employees."  Id.

Faerber also appears to argue that the phrase "at times" means
that the violation rate cannot be 100 percent.  Mot. 22-23.  As the Ninth
Circuit explained, "it makes little sense to require a CAFA defendant to
introduce evidence of the violation rate—really, the *alleged* violation
rate—because the defendant likely believes that the real rate is zero
and thus that the evidence does not exist.  For that reason, a CAFA
defendant can most readily ascertain the violation rate by looking at
the plaintiff's complaint."  Perez, 131 F.4th at 808.

Here, however, the complaint's only reference to any violation
rate is the phrase "at times," and Faerber does not offer any more
suitable alternative.  Moreover, the complaint is ambiguous as to what
"at times" refers.  It is reasonable to interpret "at times" to operate
similarly to the qualifier "some of them" with respect to "Class
Members."  And by limiting the affected "Class Members" to former
employees, Accor's assumption is consistent with the qualifier "at
times."  Faerber was "free to use some more specific phrase than 'at
times' when drafting the complaint; had [he] done so, [he] could have

_____

[2] Faerber objects to much of Accor's proffered declaration of Jose Zarate,
which provides support for its amount-in-controversy calculations.  Dkt. 15-1.
The Court relies only on relevant evidence that could be presented in a form
that would be admissible at trial.  See Ibarra, 775 F.3d at 1197 ("The parties
may submit evidence outside the complaint, including affidavits or
declarations, or other 'summary-judgment-type evidence relevant to the
amount in controversy at the time of removal.'" (quoting Singer v. State Farm
Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997))); Fraser v. Goodale,
342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do
not focus on the admissibility of the evidence's form.  We instead focus on the
admissibility of its contents.")

constrained the range of assumptions that [Accor] could reasonably adopt." Perez, 131 F.4th at 810.

Faerber also argues that because he expressly alleged that he seeks "*up to* a maximum of thirty (30) days" penalty, Accor should not have assumed that he sought the maximum for each violation. Mot. 23-24 (quoting Compl. ¶ 68). But Accor's assumption that Faerber seeks maximum penalties for all eligible class members is consistent with Faerber's allegation, especially because Faerber's waiting time penalties claim is tethered to allegations concerning failure "to pay overtime wages, minimum wages, and premium wages." Compl. ¶ 18. It is consistent with the complaint to assume that each separated employee suffered at least one instance of the varieties of underpayment alleged in the complaint, and that Accor did not rectify those alleged underpayments within 30 days of separation for any former employee in the putative class. In other words, it is "not unreasonable" for Accor "to assume that the vast majority (if not all) of the alleged violations over the [three] *years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty." Jauregui, 28 F.4th at 994.

Finally, Faerber argues that Accor unreasonably used an eight-hour average workday in its calculations, even though Accor found that the average number of hours worked per day by its separated employees was 6.93. Reply at 11-12. The Court agrees with Faerber that 6.93 hours is the more reasonable assumption. Accor does provide the amount in controversy for a 6.93-hour average workday: $4,626,864.40. Opp'n at 8 n.8.

The Court therefore finds that an amount in controversy of $4,626,864.40 for Faerber's waiting time penalties claim is supported by reasonable assumptions.

### 2.    Wage Statement Penalties

For the wage statement penalties claim, Faerber alleges that "Defendants have, at times, failed to furnish Plaintiff and Class

Members, or some of them, with itemized wage statements that accurately reflect . . . the name and address of the legal entity that is the employer[.]"  Compl. ¶ 19.  Faerber also alleges that Defendants "adopt[ed] policies and practices that resulted in their failure, at times, to furnish Plaintiff and Class Members with accurate itemized statements that accurately reflect, among other things, . . . the name and address of the legal entity that is the employer[.]"  Id. ¶ 74.

Based on these allegations, Accor identified 550 putative class members falling within the 1-year period as alleged in the complaint, identified the number of wage statements issued to those putative class members (10,514), and applied its calculation to all those wage statements at the following statutory rate: 550 initial wage statements at the $50 penalty rate and 9,964 subsequent wage statements at the $100 penalty rate, resulting in an amount in controversy of $1,023,900.  Opp'n at 11-12.

As Faerber concedes, "allegations that the incorrect name and address of the legal entity on the wage statements *could potentially* support a 100% violation rate."  Reply at 11.  But Faerber argues that "such an extreme rate is unreasonable, here, where the Complaint unequivocally provides that such violations occurred *'at times'* and as to *'some of [the PCMS].'*"  Id.

As above, with respect to "at times" and "some" of the Class Members, Accor limited its pool of employees to those falling within the 1-year period alleged in the complaint.  Opp'n at 11; Zarate Decl. ¶ 6(c).  Moreover, as Faerber concedes, allegations that Defendants adopted "policies and practices" that resulted in the failure to include "the name and address" of the employer support the assumption of a 100% violation rate.  Compl. ¶ 74.

The Court therefore finds that an amount in controversy of $1,023,900.00 for Faerber's wage statement violations claim is supported by reasonable assumptions.  Because the Court finds that the amounts in controversy for Faerber's waiting time penalties and wage statement violations claims together exceed the $5 million

amount-in-controversy requirement under CAFA, the Court need not analyze the amounts in controversy for Faerber's other claims and associated attorneys' fees.[3]

Faerber's remaining challenges to Accor's proof of the amount in controversy are facial because they do not "contest[] the truth of [the defendant's] factual allegations[.]" Salter, 974 F.3d at 964 (quoting Leite, 749 F.3d at 1121). Instead, Faerber argues that "Accor has failed to proffer *any* evidence, at all, to support its assumptions and variables used to calculate its" amount in controversy in its notice of removal. Mot. at 19. Faerber also argues, in his reply, that Accor's violation rate was supported by "inadequate" "extrinsic evidence." Reply at 11.

Such challenges, however, are "foreclosed by the Supreme Court's decision in Dart and [the Ninth Circuit's] opinion in Arias." Salter, 974 F.3d at 964. Accor is not "required to present evidence in support of its jurisdictional allegations when" Faerber "assert[s] a facial, rather than a factual, challenge to the notice of removal." Id. at 964-65 (citing Ehrman v. Cox Commc'ns, Inc., 932 F.3d 1223, 1227-28 (9th Cir. 2019)).

## B.    Equitable Jurisdiction

Finally, Faerber contends that remand of the entire case is warranted because the Court lacks equitable jurisdiction over its California Unfair Competition Law (UCL) claim. Mot. at 34. Under "federal equitable principles, . . . equitable relief must be withheld when an equivalent legal claim would have been available[.]" Guzman v. Polaris Indus. Inc., 49 F.4th 1308, 1312 (9th Cir. 2022).

Because Faerber – apparently deliberately – "has not affirmatively pleaded that he lacks an adequate remedy at law for his

---

[3] Additionally, the Court need not address the parties' arguments on whether Accor could include the amounts in controversy for Faerber's other claims that were not included in its notice of removal. Consequently, and because the Court also does not analyze the parties' arguments concerning attorneys' fees, the Court denies as moot Accor's request for judicial notice of exhibits related to those issues. Dkt. 14.

restitution claim" under the UCL, Mot. at 35, the Court agrees it does not have equitable jurisdiction over that claim. Because the Court has jurisdiction over some of Faerber's claims, however, it may not remand the entire case. <u>Lee v. Am. Nat'l Ins. Co.</u>, 260 F.3d 997, 1006 (9th Cir. 2001) ("The district court lacks jurisdiction to decide only some, but not all, of [the plaintiff's] claims; the court, therefore, could not have remanded [the plaintiff's] entire case.").[4]  But rather than dismissing the claim, the Court grants Faerber leave to amend the complaint with respect to his UCL claim. <u>Bacon v. Woodward</u>, 104 F.4th 744, 753 (9th Cir. 2024) ("[A] district court should grant leave to amend *even if no request to amend the pleading was made*, unless it determines that the pleading could not be cured by the allegation of other facts." (quoting <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000))).

The Court otherwise finds that it has jurisdiction under CAFA. The Court therefore need not analyze whether it also has traditional diversity or other federal question jurisdiction. Accor's request to strike Faerber's reply concerning those other bases for jurisdiction, as well as attorneys' fees calculations, Dkt. 16, is denied as moot.

### III. CONCLUSION

Faerber's motion to remand is DENIED. Accor's requests for judicial notice and to strike Faerber's reply are DENIED as moot. Leave to amend Faerber's complaint with respect only to his UCL claim is GRANTED, if Faerber can do so consistent with Rule 11 of the Federal Rules of Civil Procedure. An amended complaint may be filed and served no later than November 17, 2025. Failure to file an amended complaint by that date will waive Faerber's right to do so and the UCL claim will be dismissed without leave to amend and without prejudice. Leave to amend is granted only to address the specific issue identified in the Order. Leave to add new claims or new defendants is not granted. Faerber must seek leave to amend to add new defendants

---

[4] The cases Faerber cites in support of his request to remand the entire case, Mot. at 34-35, are inapposite. Faerber fails to cite this controlling Ninth Circuit case that makes clear his request cannot be granted.

or new claims by a properly noticed motion.  Faerber must provide a redlined version of the amended complaint to the Court's generic chambers email address.

       IT IS SO ORDERED.

Date: October 24, 2025

                 Dale S. Fischer
                 United States District Judge